UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHIRLEY A. MARTIN,                                  Case No. 12-14773

            Plaintiff,                              Paul D. Borman
v.                                                  United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                    Michael Hluchaniuk
                                                    United States Magistrate Judge
            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 17, 22)**

I.    **PROCEDURAL HISTORY**

      A.    **Proceedings in this Court**

      On October 26, 2012, plaintiff Shirley A. Martin filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Paul D. Borman referred this matter to the undersigned

for the purpose of reviewing the Commissioner's decision denying plaintiff's

claim for child's insurance benefits.  (Dkt. 4).  This matter is before the Court on

cross-motions for summary judgment.  (Dkt. 17, 22).  Plaintiff also filed a reply

brief in support of her motion for summary judgment.  (Dkt. 23).

### B.     Administrative Proceedings

Plaintiff filed the instant claim for Disabled Adult Child disability benefits based on her deceased father's eligibility on January 8, 2008, alleging disability beginning January 1, 1977.  (Dkt. 12-5, Pg ID 172-73).  Plaintiff's claim was initially disapproved by the Commissioner on May 30, 2008.  (Dkt. 12-3, Pg ID 104).  Plaintiff requested a hearing and on October 16, 2009, plaintiff appeared with a non-attorney representative before Administrative Law Judge ("ALJ") James M. Mitchell, who considered the case de novo.  (Dkt. 12-2, Pg ID 77-102).[1] In a decision dated January 29, 2010, the ALJ found that plaintiff was not disabled.  (Dkt. 12-2, Pg ID 54-61).  Plaintiff requested a review of this decision on February 10, 2010.  (Dkt. 12-2, Pg ID 52).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on September 7, 2012, denied plaintiff's request for review.  (Dkt. 12-2, Pg ID 48-50); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be

---

[1]Plaintiff initially appeared without a representative for a hearing before this same ALJ on June 9, 2009, and the ALJ continued the hearing so that plaintiff could obtain a representative. (Dkt. 12-2, Pg ID 54-61).  Also, plaintiff previously filed a Title XVI application for supplemental security income in 1986 and was awarded benefits.  Plaintiff is currently receiving payments under Title XVI.  (Dkt. 12-2, Pg ID 60; Dkt. 12-6, Pg ID 194).

**REVERSED**, and that this matter be **REMANDED** to the Commissioner for further proceedings consistent with this Report and Recommendation.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born on November 25, 1957 and was 51 years old at the time of the administrative hearing, and 19 years old on January 1, 1977, the alleged onset date of disability.  (Dkt. 12-2, Pg ID 59).  Plaintiff had no past relevant work history.  (Dkt. 12-2, Pg ID 59).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 12-2, Pg ID 59).  At step two, the ALJ found that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment prior to age 22. (Dkt. 12-2, Pg ID 59-61).  The ALJ thus concluded that plaintiff had not been under a disability at any time prior to November 24, 1979, the date she attained age 22.  (Dkt. 12-2, Pg ID 61).

### B.    Plaintiff's Claims of Error

Plaintiff first argues that the ALJ's adverse credibility findings are premised on a legally impermissible basis according to Social Security Ruling (SSR) 83-20. According to plaintiff, the ALJ found that the testimony of plaintiff's sister, Ms. Beverly Louise Pabirzis, about plaintiff prior to age 22,  was not credible solely

because of the "lack of a diagnosis and the complete lack of evidence from that period." (Tr. 13). Plaintiff contends that the ALJ cites absolutely zero inconsistencies between Ms. Pabirzis's testimony and the other evidence of record. Plaintiff argues that this analysis by the ALJ is both legally and factually erroneous.

According to plaintiff, on the legal side, the ALJ's analysis, were it accepted, would have the effect of vitiating SSR 83-20. The ALJ ruled that the absence of medical records from the time period around November 1979 meant that Ms. Pabirzis's testimony could not be accepted as credible. (Tr. 13). Plaintiff asserts that the ALJ cites absolutely no other reason at all for his adverse credibility finding. Plaintiff posits that the ALJ appears to be unaware that SSR 83-20 specifically addresses the situation where medical evidence pertaining to the relevant time period is not available. In such instances, SSR 83-20 directs adjudicators to obtain testimony from "family members" and other lay sources. Plaintiff argues that the ALJ's faulty reasoning defeats the entire purpose of SSR 83-20. Far from making such testimony inherently non-credible, that ruling requires adjudicators to seek out such testimony from family members. Plaintiff contends that SSR 83-20 in no way mandates a diagnosis or proof of treatment during the relevant time period. Rather, it specifically accepts that this situation can occur and requires SSA's adjudicators to seek out lay evidence to attempt to

4

ascertain a reasonable disability onset date.  Plaintiff argues that the ALJ here

plainly violated this ruling by concluding that the testimony of plaintiff's sister

could not be considered credible due to the absence of contemporaneous

treatment.  Plaintiff continues that this is not a case where the ALJ merely failed to

mention SSR 83-20.  Rather this is a case where the ALJ's actions directly

violated and frustrated the purpose of SSR 83-20.

On the factual side, plaintiff argues that the ALJ's finding that the testimony

of Ms. Pabirzis was not credible completely ignores the evidence of record which

corroborated that testimony.  *See Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th

Cir. 1989) (in the absence of inconsistencies in a case where disability onset must

be inferred, there is no basis for an adverse credibility finding).  Plaintiff asserts,

for example, that there are no actual inconsistencies between that testimony and

the evidence of record, and that, to the contrary, the evidence of record actually

corroborates Ms. Pabirzis's testimony.  For example, her testimony was consistent

with what her deceased mother had reported to SSA's doctor more than 25 years

ago.  According to plaintiff, her mother had stated many years ago, decades before

anyone could have contemplated the significance for a DAT claim more than 25

years later, that plaintiff had been psychologically disturbed since high school.

(Tr. 524, 525).  Plaintiff contends that this prior statement from 1986, which the

Social Security Administration accepted as truthful in awarding plaintiff SSI

benefits back then, dates the claimant's profound mental difficulties to the same time period as that stated by Ms. Pabirzis. (Tr. 46-47).

Plaintiff argues that another point of corroboration is the unusual and inappropriate smile reported by the treating psychiatrist back in 1986. (Tr. 533). Plaintiff asserts that this same observation was offered by plaintiff's sister during the period at issue. (Tr. 48). Plaintiff further argues that her sister's testimony that plaintiff only ever worked a few days in her life is corroborated by both plaintiff's testimony (even though she was unsure of the year) and SSA's own earnings records. (Tr. 37, 129). Finally, plaintiff argues that the medical opinion of SSA's own doctor corroborates serious mental symptoms dating back to high school, as Ms. Pabirzis had testified. (Tr. 524, 525). According to plaintiff, there is no evidence of any kind to the contrary.

Plaintiff concludes therefore that the ALJ found Ms. Pabirzis's testimony non-credible for a legally erroneous reason. The ALJ not only failed to mention SSR 83-20, but rather directly violated that Ruling through employing a directly contrary analysis. Further, the ALJ's adverse credibility finding wholly ignores the corroborating evidence supporting the testimony of plaintiff's sister. Plaintiff argues that, for these reasons alone, remand is required.

Plaintiff further argues that the ALJ impermissibly required treatment and diagnoses by the relevant medical sources during the time period at issue in direct

contravention of SSR 83-20. And, in a further violation of SSR 83-20, the ALJ discounted the 1986 reports of SSA's own consultative psychiatrist and a treating psychiatrist for a faulty reason. Plaintiff argues that, in an error similar to his first error, the ALJ discounted these two opinions because there was no evidence of diagnosis, treatment, or symptoms during the relevant time period. (Tr. 13). Plaintiff contends that the ALJ is effectively requiring these medical sources to have examined or treated the claimant during the relevant time period. But, plaintiff contends, the ALJ's analysis is legally and factually wrong.

Plaintiff argues that, on the legal side, the Sixth Circuit has affirmatively rejected the ALJ's analysis here, which is premised upon the concept that disability only commenced at the time that the claimant first seeks treatment. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303-04 (6th Cir. 1988) (holding that it is legal error for SSA to find that the first date of diagnosis somehow controls the date of disability onset). According to plaintiff, the ALJ here completely ignores the fact that the treating psychiatrist had documented back in 1986 that Ms. Martin had been resistant to treatment. (Tr. 530). Further, the ALJ violated Sixth Circuit precedent by effectively chastising plaintiff for not seeking mental treatment when she was a teenager. *See Blankenship*, 874 F.2d at 1124 (holding that it was improper for an ALJ to chastise someone with a schizoid disorder for failing to seek out mental treatment ). Plaintiff argues that the first

7

date of treatment or the first date of diagnosis is not controlling here because if ALJs were permitted to merely rely upon the first date of treatment or diagnosis, then SSR 82-30 would be vitiated.  Plaintiff concludes that, for these reasons, the ALJ's entire legal analysis of the medical source opinions here is faulty as a matter of law.

Plaintiff argues that, on the factual side, there certainly was evidence of serious symptoms during the relevant time period, for the same reason as discussed above.  Moreover, plaintiff asserts that it is important to note that the Commissioner previously accepted both of these medical opinions as truthful and accurate in awarding SSI benefits back in 1986.  (Tr. 142, 143).

Plaintiff further argues that the ALJ violated SSR 83-20 by failing to call a medical expert witness in this case where the date of disability onset had to be inferred.  Plaintiff asserts that SSR 83-20 provides that when evidence pertaining to the relevant time period is not available and a disability onset date must be inferred, the ALJ "should call on the services of a medical advisor."  In this case, evidence from the relevant time period was both missing and destroyed.  Yet the claimant has admittedly been mentally disabled by paranoid schizophrenia for decades.  Consistent with SR 83-20, the ALJ was obliged to call a medical expert witness here and his failure to do so was legal error.  Plaintiff continues that, as the Sixth Circuit has held, SSR 83-20 requires an ALJ to call a medical expert

witness "when an individual claims disability and there is no development of the medical record which the ALJ can rely to ascertain onset." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *see also Blea v. Barnhart*, 466 F.3d 903, 911 (10th Cir. 2006); *Walton v. Halter*, 243 F.3d 703, 709 (3d Cir. 2001) (holding that when a disability onset date must be inferred, an ALJ should not rely upon his own lay analysis and must call on the services of a medical expert witness). Plaintiff contends that this is particularly true when the case involves a slowly progressive impairment like schizophrenia. *Blankenship*, 874 F.2d at 1119, 1121, 1122. Plaintiff argues, in short, the ALJ facially violated both SSR 83-20 and relevant circuit precedent by failing to properly develop the record by calling upon a medical expert witness. *See Sims v. Apfel*, 530 U.S. 103, 111 (2000) (holding that "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits"). Plaintiff argues that, for these reasons, remand is required.

Plaintiff continues that the simple fact is that the instant case is precisely the type of case that SSR 83-20 was written for, and it must be emphasized that in this case the ALJ admitted that records pertaining to the relevant time period had been destroyed. (Tr. 13, 536). Faced with this fact and the evidence from a treating source and SSA's own consultative psychiatrist (both of whom suggested the presence of serious mental symptoms long before their examinations in 1986),

9

plaintiff contends it was incumbent upon the ALJ to call a medical expert witness here to listen to the testimony, review the entire record, and determine when plaintiff actually became disabled.  Plaintiff continues that it is striking that the ALJ himself acknowledged that SSA's own consultative psychiatrist acknowledged serious mental symptoms dating back to high school.  (Tr. 13).  Similarly, the ALJ repeated that the treating psychiatrist in 1986 had acknowledged that such problems had been present for some time.  (Tr. 13).  In light of these facts and the foregoing legal authority, plaintiff argues it was wholly improper for the ALJ to rely upon his lay conjecture and simply terminate all analysis due to the absence of medical evidence dating directly from the time period.  Plaintiff asserts that, indeed, there is no medical evidence here contrary to the opinions of the treating and examining psychiatrists.

Plaintiff further asserts that there is a subtle but very real inference in this record suggesting that plaintiff has been mentally disabled her entire adult life.  To begin with, she has been on SSI for her chronic paranoid schizophrenia since 1986.  (Tr. 13, 33-35, 38, 142, 143).  And, plaintiff contends, it is a testament to how profoundly disabled she has always been as an adult that SSA found her disabled at the initial level of review due to mental impairments even though she was so exceptionally young.  Plaintiff continues that another point that should not be lost is that the ALJ here found "no medically determinable impairment" at all.

10

(Tr. 12, 13, 14).  In other words, the ALJ found that plaintiff had absolutely nothing wrong with her during the relevant time period.  The step two finding only requires a de minimis standard.  *Salyers v. Sec'y Health & Human Servs.*, 798 F.2d 897, 900 (6th Cir. 1986) (providing that an impairment may be found "not severe" at the second step of the sequential evaluation process, only if it represents such a "slight" abnormality that it "would not affect the claimant's ability to work" regardless of any other vocational factors); *see also* SSR 85-28, 1985 WL 56856 *3 (defining a non-severe impairment as no more than a "slight abnormality" that would have no more than a "minimal effect" on a claimant's ability to work). Plaintiff continues that although step two severity is only a de minimis standard, a medically determinable impairment is an even markedly lower threshold than that, and the ALJ's finding here is not supported by the record.

Plaintiff further argues that there is one final compelling fact which should not be overlooked.  In her prior application in 1986, plaintiff had alleged a disability onset date of December 31, 1975.  (Tr. 523).  The SSA itself entered a fully favorable decision on that prior application.  (Tr. 12, 33-35, 38, 142, 143). Plaintiff does not argue that this prior finding was absolutely binding on SSA per se.  Indeed it is reasonable that, decades later when a new DAC application is filed, SSA will review the entire time period at issue in determining whether DAC should be awarded.  But it is not acceptable for the ALJ to fail to explain how he

11

even considered this prior determination by the Agency. Plaintiff asserts that this is a particularly troubling oversight given that the claimant's non-attorney representative had affirmatively noted this fact to the ALJ. (Tr. 206). Plaintiff concludes that, overall, the ALJ's decision violated SSR 83-20 in three independent ways, any of which warrant remand for further administrative proceedings.

### C.    The Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ reasonably found at Step Two of the sequential analysis that there was no medical signs or laboratory findings to substantiate the existence of a medically determinable impact prior to November 24, 1977. The Commissioner asserts that plaintiff bore the burden of proving she had a severe, medically determinable, impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work . . . ."). An impairment, as defined by the regulations, must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1529; SSR 96-4p, 1996 WL 374187, at *1. According to the Commissioner, where a claimant fails to

12

prove a medically determinable physical or mental impairment, an individual must be found not disabled at step two of the sequential evaluation process, as was done here. SSR 96-4p, 1996 WL 374187, at *1. Further, no symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment. *Id.* The Commissioner argues that plaintiff ignores the requirements of Social Security Ruling 96-4p.

According to the Commissioner, the ALJ reasonably found that plaintiff failed to provide medical signs or laboratory findings to substantiate the existence of a medically determinable mental impairment prior to November 1979. Plaintiff did not seek treatment for mental illness until May 1986 (Tr. 530), more than six years after she turned 22. The record included two psychiatric evaluations performed in 1986 by psychiatrists, including what appears to be a treating psychiatrist, D.S. Nair, M.D. (Tr. 524-35). As the ALJ recognized, one evaluation noted that plaintiff had experienced symptoms for "some time," but had not sought active treatment until May 1986. (Tr. 13, citing 530). The other stated that plaintiff reported a psychiatric condition that began in high school. (Tr. 13, citing 524). Plaintiff described her main problem as "nerves" and indicated that she was unable to work because of her "nerve condition." (Tr. 524). She said she felt

13

anxious and described a preoccupation with the spiritual world.  (Tr. 524).

The Commissioner contends that the ALJ reasonably found these evaluations failed to show medical signs that substantiated the existence of a medically determinable impairment in 1979.  Neither of these evaluations offered observable facts that were medically described and evaluated that related back to 1979.  (*See* Tr. 524-35).  Both of the statements concerning how long plaintiff had been experiencing mental health issues were in the section entitled "Complaints and Symptoms" and were self-reported statements of symptoms and history from plaintiff.  (Tr. 524, 530).  According to the Commissioner, the statements were not the psychiatrists' own assessment or opinion of how long plaintiff had experienced psychiatric problems based on the observed facts.  Thus, the Commissioner concludes, it was reasonable for the ALJ to find these records failed to document any medical signs to substantiate a medically determinable impairment.  (Tr. 13).

The Commissioner asserts that plaintiff also submitted two opinions issued in 2008 — (1) an opinion from retired psychologist, B.T. Morse, Ph.D., who treated plaintiff from 1988 through 1999 (Tr. 290-91); and (2) an opinion from psychiatrist, John W. Head, Jr., D.O. and therapist, Rita Mueller, who treated plaintiff at the Hegira-Westland Counseling Center from 2000 through the date of the hearing.  (Tr. 292 and preliminary treatment plan from Hegira-Westland dated July 2000, Tr. 254).  The Commissioner contends that the ALJ reasonably found

14

these opinions failed to show medical signs to substantiate an impairment as of 1979. Dr. Morse submitted a letter that "summarized the period of time she worked with me in treatment. " (Tr. 290). In the letter, Dr. Morse offered a prospective opinion of plaintiff's present abilities, indicating that he believed plaintiff was "no more able to support herself now than then." (Tr. 290). Dr. Morse, however, did not offer any retrospective opinion relating plaintiff's condition in 1988 through 1999 back to 1979. (Tr. 290-91). As the ALJ noted, Dr. Morse did not begin treating plaintiff until 1988, nine years after she turned 22, and the opinion did not apply to plaintiff's condition prior to November 24, 1979. (Tr. 13, citing Tr. 290-91).

The Commissioner further asserts that Dr. Head and Ms. Mueller submitted a short, five sentence, letter concerning plaintiff. (Tr. 292). They wrote that plaintiff was "permanently disabled" and "unable to work;" included a diagnosis of schizophrenia; and said "[w]e have gathered from her history that she never has been employed or able to hold gainful employment." (Tr. 292). According to the Commissioner, the ALJ reasonably noted that the Head/Mueller statements concerning disability and inability to work were not medical opinions under the regulations. 20 C.F.R. § 404.1527(e); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (internal

15

citations omitted).  The ALJ also noted that there was nothing in the letter to

suggest that the Head/Mueller comments were intended to refer to the distant past,

more than 20 year before the initial evaluation.  (Tr. 13, 254).

The Commissioner continues that the ALJ also received opinion evidence

from a State agency reviewing psychiatrist, Ashok Kaul, M.D.  (Tr. 275-89).  After

reviewing the medical record, Dr. Kaul concluded that there was insufficient

evidence to determine whether plaintiff was disabled prior to November 24, 1979.

(Tr. 275-76).  The Commissioner contends that the ALJ reasonably gave great

weight to Dr. Kaul's assessment as it was consistent with the record evidence.  (Tr.

14).

The Commissioner notes that plaintiff argues that the inquiry at step two of

the sequential evaluation has a de minimis standard for severity.  (Dkt. 17, p. 11).

The Commissioner argues that plaintiff's argument totally ignores the fact that

step two requires the claimant to prove medically determinable impairment, as

well as the severity of said impairment.  20 C.F.R. § 404.1520(a)(4)(ii); 404.1529.

According to the Commissioner, plaintiff submitted two opinions, but neither of

those opinions related plaintiff's condition back to the relevant period.  (Tr. 290-

92).  The Commissioner contends, as discussed above, the two psychiatric

evaluations from 1986 provided only self-reported histories of symptoms, not an

opinion or any other evidence relating the course of plaintiff's illness back to

1979.  (Tr. 524-35).  According to the Commissioner, this is not a case where it was determined that there was an impairment, but the impairment was not severe. Rather, the ALJ reasonably found there were no medical signs to substantiate the existence of a medically determinable impairment.  (Tr. 12-14).  While plaintiff may disagree with the ALJ, the Commissioner contends that the ALJ's findings were well within the zone of reasonable choices.  *See Mullen v. Bowen*, 800 F.2d 535, 595 (6th Cir. 1986).  The Commissioner argues that because the ALJ made a reasoned and reasonable decision based on substantial evidence, the ALJ's decision should be affirmed.

The Commissioner further notes that plaintiff argues that ALJ violated Social Security Ruling 83-20 in reaching his decision.  (Dkt. 17, pp. 8-12). According to the Commissioner, SSR 83-20 addresses the type of evidence to be considered in establishing the onset date of a disability, but does not address the evidence needed or that should be considered to prove the presence of a medically determinable impairment.  Rather SSR 83-20 focuses on evidence that can be used to determine how long an impairment has existed at a disabling level. Thus, according to the Commissioner, SSR 83-20 only applies once disability has been determined and there is a need to pinpoint an onset date.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).  The Commissioner contends that SSR 83-20 does not apply here, where there was no finding of disability.  *See id.*

17

(agreeing that SSR 83-20 was inapplicable where there was no finding of disability "[s]ince there was no finding that the claimant is disabled as a result of his mental impairment or any other impairments or combination thereof, no inquiry into onset date is required"). The Commissioner argues that while plaintiff was found to be disabled at some point in 1986, the ALJ here did not find disability. (Tr. 14). Because there was no finding of disability, there was no need to establish an onset date and SSR 83-20 did not apply.

The Commissioner continues that even if SSR 83-20 did apply, the ALJ's decision comported with this ruling. As an initial matter, the Commissioner asserts that the ALJ was not required to reference SSR 83-20. *Key*, 109 F.3d at 274. According to the Commissioner, plaintiff contests the ALJ's weighing of the testimony from plaintiff's sister in light of SSR 83-20. (Dkt. 17, pp. 6-8). The Commissioner contends that SSR 83-20, however, does not mandate that an ALJ credit evidence from lay witnesses, only that such evidence may be considered. SSR 83-20, 1983 WL 31249, at *3. "If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation. Information *may* be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the

18

course of the individual's condition." *Id.* The Commissioner argues that here, plaintiff's sister explained that there were no medical records from the relevant period because her sister did not seek treatment until 1986. (Tr. 50). There was some discussion of a possible hospitalization prior to 1979 (Tr. 50-51) and plaintiff notes that certain hospital records were destroyed. (Dkt. 17, p. 10, citing Tr. 536). However, in 1986, plaintiff and her mother indicated that there had been no prior hospitalizations. (Tr. 524). The Commissioner concludes that, given that plaintiff admitted that she did not seek treatment until 1986 and her denial of any hospitalization prior to 1986, there is nothing to suggest that the destroyed evidence related to plaintiff's mental condition.

The Commissioner argues that the ALJ gave a reasonable explanation for partially discrediting testimony from plaintiff's sister based on the absence of diagnoses or medical evidence relating back to 1979. (Tr. 13). The Commissioner noted, as an initial matter, credibility determinations are entitled to considerable deference. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997). This Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476; *see also Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir.1987) ("we will not normally substitute our impressions on the veracity of a witness for those of the trier of

19

fact"). As the ALJ noted, plaintiff did not seek treatment until 1986, more than six years after the relevant period. (Tr. 13, citing Tr. 530). According to the Commissioner, while individuals with mental illnesses may not seek treatment or may not be regular in their treatment due to the nature of their illness, plaintiff did eventually seek treatment. Once she sought treatment, Dr. Morse indicated that plaintiff regularly saw him twice per month. (Tr. 290). Moreover, the Commissioner continues, the ALJ only partially discredited the sister's testimony as it related to establishing an impairment. And, no matter how compelling the sister's testimony was, such testimony could never establish a medically determinable impairment. *See* SSR 96-4p, 1996 WL 374187, at *1.

The Commissioner further argues that, contrary to plaintiff's suggestion, the ALJ did not indicate that plaintiff needed to provide contemporaneous medical records from 1979. Rather, the ALJ found there was no evidence of medical signs relating back to the relevant period. (Tr. 13-14). According to the Commissioner, plaintiff submitted two opinions and, as the ALJ noted, neither of these opinions related the diagnosis or any other of the  observations or opinions of plaintiff back to the relevant period. (Tr. 13-14). The Commissioner asserts that the two psychiatric evaluations from 1986 included plaintiff's self-reported history of symptoms, but contained no evidence from the psychiatrists that would relate plaintiff's 1986 condition back to 1979. (Tr. 13). The Commissioner contends

that the ALJ did not require a contemporary diagnosis or other contemporaneous medical evidence.  Rather, in accordance with the regulations, the ALJ required some medical evidence that related back to the relevant period in order to prove a medically determinable impairment.  The Commissioner argues that SSR 83-20, although it applies only to establishing an onset date, similarly requires medical evidence.  "How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have *a legitimate medical basis*."  SSR 83-20, 1983 WL 31249*,* at *3 (emphasis added).

The Commissioner further asserts that plaintiff suggests the ALJ should have requested medical expert testimony.  The Commissioner states, however, that the ALJ has discretion to determine whether an additional evaluation is necessary. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) ("The ALJ has discretion to determine whether additional evidence is necessary."); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary") (citing 20 C.F.R. § 404.1517).  The Commissioner argues that this is not a case where there is no opinion evidence.  Indeed, the record included an opinion from a state agency reviewing psychiatrist who found insufficient evidence and two treating psychiatrists who did not provide an opinion that related

21

back to the relevant period.  Thus, the Commissioner concludes, the ALJ did not
abuse his discretion in deciding not to request a fourth opinion.  Moreover, as
discussed above, SSR 83-20 only applies to expert opinions concerning the onset
of disability.  The Commissioner argues that the ALJ did not find disability and,
thus, did not need an expert opinion regarding the onset date.

The Commissioner therefore concludes that the ALJ's decision was
supported by substantial evidence in the record as a whole and requests that the
Court affirm his decision upon substantial evidence review.  The Commissioner
argues that plaintiff's request for remand under Sentence Six should be denied.

### D.    Plaintiff's Reply Brief

Plaintiff argues that the Commissioner plays games here by claiming that
SSR 83-20 is not applicable here because the ALJ made no finding of disability.
Plaintiff posits that the reason the Commissioner is fighting to have SSR 83-20
found to be irrelevant to the instant case is because, as plaintiff showed in her
opening brief, it is so readily apparent that the ALJ violated that ruling at every
turn.  Plaintiff contends, however, that the reality is that the Commissioner already
found plaintiff disabled based on a 1986 SSI application.  (Tr. 13, 33-35, 38, 142,
143).  Yet, plaintiff continues, it is not merely that the Commissioner found
plaintiff disabled as of this date, but rather that the ALJ himself even recognized in
his decision this prior determination and that the claimant was indeed disabled as

22

of at least 1986. (Tr. 13). Plaintiff argues that the Agency cannot cite to any authority for the proposition that a prior finding of disability by the Social Security Administration itself, which its own ALJ acknowledges, is not sufficient to establish a finding of disability. Plaintiff contends that there can be no doubt that a finding of disability was made. Accordingly, the Commissioner's defense that SSR 83-20 does not apply because of the supposed absence of a finding of disability is frivolous.

Second, plaintiff argues that it is revealing that the Commissioner never discusses the case of *Blankenship v. Bowen*, 874 F.2d 1116 (6th Cir. 1989), which plaintiff contends is a precedential case with a long-established rule that it is improper for an ALJ to effectively punish an individual with a schizoid disorder for not seeking out mental treatment in a timely fashion. *Blankenship*, 874 F.3d at 1124. Plaintiff posits that the Commissioner intentionally chose not to discuss *Blankenship* because it has no defense for the ALJ's facial violation of that binding circuit precedent. Plaintiff asserts that the ALJ's violation here is even worse than the violation in *Blankenship* because the ALJ here punishes a mentally disturbed younger (at the time) individual who had to rely on her parents to make such decisions. According to plaintiff, the only reason the Commissioner does not discuss *Blankenship* is because it is aware that it must lose under that precedent.

Third, plaintiff argues that the Commissioner distorts plaintiff's argument

that the ALJ violated SSR 83-20 by finding the claimant's sister, Ms. Pabirzis, to be non-credible solely because of the "lack of a diagnosis and the complete lack of evidence from that period." (Tr. 13). Plaintiff contends that because the Commissioner cannot effectively respond to this argument, the Commissioner instead contends that plaintiff argued that SSR 83-20 "mandate(s)" that an ALJ credit third party witness testimony. (Dkt. 22, p. at 10). Plaintiff asserts that her opening brief contains no such argument, and the real point asserted is that it was improper for the ALJ to render an adverse credibility finding solely due to the absence of medical records dating precisely from the relevant time period. According to plaintiff, SSR 83-20 prohibits such an adverse credibility finding by itself. Of course that ruling does not require that any testimony be found inherently credible, but it does preclude an adjudicator from rendering an adverse credibility finding merely because of the absence of medical records from the relevant time period. SSR 83-20.

Plaintiff further asserts that the Commissioner, like the ALJ, repeatedly emphasizes the absence of precise evidence from the relevant time period as the reason why this case must be denied. The Commissioner, however, goes even further than the ALJ and suggests that the absence of such evidence makes SSR 83-20 inapplicable. In response, plaintiff refers to the section of SSR 83-20 entitled "*Precise Evidence Not Available -- Need for Inferences*." According to

24

plaintiff, the Commissioner (like the ALJ) appears to be unaware that the absence of precise evidence from the relevant time period is the necessary factual predicate which requires the testimony of a medical expert as to onset.

Finally, plaintiff argues that even if all of the foregoing were ignored, remand would still be required in this case because it is indisputable that the Commissioner itself agrees that plaintiff has been a profoundly disturbed and disabled paranoid schizophrenic for decades (Tr. 13, 33-35, 38, 142, 143), and the only question is when precisely that uncontested disability began. Plaintiff argues that, in this case, despite acknowledging plaintiff's longstanding mental disability (Tr. 13), the ALJ violated SSR 83-20 by completely failing to establish a specific onset date on which plaintiff's admitted disability began. For the reasons set forth above and in her opening brief, plaintiff requests that the Court reverse and remand this case for further administrative proceedings under the fourth sentence of 42 U.S.C. § 405(g).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The

administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant

26

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

## B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.). Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled. F. Bloch,

Federal Disability Law and Practice § 1.1 (1984). While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

29

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis and Conclusions

Plaintiff here has filed for disabled adult child benefits.  (Tr. 122-23).

Disabled adult child ("DAC") disability benefits are available "if such child was

under a disability . . . at the time he attained the age of 18 or if he was not under

such a disability . . . at such time but was under a disability . . . at or prior to the

time he attained . . . the age of 22."  42 U.S.C. § 402(d)(1)(G); 20 C.F.R.

§ 404.350(a).  Section 402(d) "provides that a child of an individual entitled to old

age or disability insurance benefits is entitled to Child's Insurance Benefits if he is

under a disability (as defined by section 223(d) of the Social Security Act) which

31

began before [her] twenty-second birthday." *Jones v. Sec'y of Health & Human Servs.*, 1990 WL 17265, at *1 n.1 (6th Cir. Feb. 27, 1990); *Sibotean v. Comm'r of Soc. Sec.*, 2013 WL 588927, at *2 (W.D. Mich. Feb. 13, 2013).

Plaintiff here reached age 22 on November 25, 1979. (Dkt. 12-2, Pg ID 59). Accordingly, plaintiff's DAC claim requires a finding of disability on or before November 24, 1979, the day before her twenty-second birthday. *See* 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. § 404.350(a)(5). The undersigned notes that plaintiff was previously found disabled for the purpose of receiving SSI benefits in 1986. However, the relevant date for determining whether a claimant is disabled, and thus eligible to receive SSI benefits, is the filing date of her application, here, in July 1986. *See* SSR 83-20, 1983 WL 31249, at *7 (explaining that for successful SSI benefits claimants, "[o]nset will be established as of the date of filing provided the individual was disabled on that date"). Accordingly, a finding that plaintiff was disabled in July 1986 does not necessarily indicate that she was disabled before November 25, 1979, the date on which she turned 22, and the relevant date for plaintiff's claim for disabled adult benefits. *See Stringer v. Astrue*, 465 Fed. Appx. 361, 365 (5th Cir. 2012) ("Accordingly, a finding that Stringer was disabled in October 1997 does not indicate that he was disabled before April 1, 1985, the date on which he turned 22.").

However, "[i]n cases like this, where a claimant with an alleged disability

32

onset date preceding [his] 22nd birthday files an application for adult child's benefits, and has already been found disabled under another title of the Social Security Act for the period postdating [his] 22nd birthday, SSR 83-20 *requires* the ALJ to determine the onset date of disability." *See Houston v. Comm'r of Soc. Sec.*, 2011 WL 6152992, at *11 (E.D. Mich. Sept. 30, 2011) (emphasis added, quoting *Plumley v. Astrue*, 2010 WL 520271, at *5 (D. Vt. Feb. 9, 2010) (citing SSR 83-20, 1983 WL 31249)), *adopted by* 2011 WL 6152982 (E.D. Mich. Dec. 9, 2011).  Further, contrary to the assertion of the Commissioner, the ALJ is required to follow the framework set forth in SSR 83-20, even when the ALJ has found at step two of the DAC proceeding that the claimant did not have a medically determinable impairment during the alleged disability period because of a lack of objective medical evidence establishing the existence of an impairment during that period, if the claimant has already been found disabled under another title of the Social Security Act.  *See Falconi v. Astrue*, 2012 WL 5381833, at *3-4 (D. Vt. Nov. 1, 2012) (holding the ALJ erred in failing to follow the framework set forth in SSR 83-20, and relying too heavily on the absence of objective medical evidence from the alleged disability period, in determining that the plaintiff was not disabled and did not have a medically determinable impairment during that period); *Turtle v. Astrue*, 2012 WL 984495, at *3 (E.D. Okla. Mar. 22, 2012) (in a case where the plaintiff alleged PTSD and where the ALJ determined at step two

33

that plaintiff did not suffer from a medically determinable impairment before the date of last insured, court rejected defendant's argument that SSR 83-20 did not apply to a case where the ALJ failed to find an impairment and disability; the court noted that the argument "makes no logical sense" because "an ALJ who chooses to end the sequential evaluation prematurely precludes a claimant from later arguing a progressive condition relates back before the expiration of the date of insured status"). As *Falconi* noted, "court have found that if a claimant has already been found to suffer from a disabling impairment, objective medical evidence, while preferred, is not essential to resolving the onset date of that disability." 2012 WL 5381833, at *3-4 (citation omitted).

Regarding disabilities of a "nontraumatic origin," such as in this case, SSR 83-20 provides that the ALJ should consider "the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity" when determining the disability onset date. SSR 83-20, 1983 WL 31249, at *2.[2] The ruling further provides:

> Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the distant past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and

---

[2] "Social Security Rulings are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'" *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990) (citations omitted).

other evidence that describe the history and
symptomatology of the disease process. . . .

In determining the date of onset of disability, the date
alleged by the individual should be used if it is consistent
with all the evidence available.  When the medical or
work evidence is not consistent with the allegation,
additional development may be needed to reconcile the
discrepancy.  However, the established onset date must
be fixed based on the facts and can never be inconsistent
with the medical evidence of record. . . .

In some cases, it may be possible, based on the medical
evidence to reasonably infer that the onset of a disabling
impairment(s) occurred some time prior to the date of the
first recorded medical examination, e.g., [on] the date the
claimant stopped working. . . .

If reasonable inferences about the progression of the
impairment cannot be made on the basis of the evidence
in file and additional relevant medical evidence is not
available, it may be necessary to explore other sources of
documentation. Information can be obtained from family
members, friends, and former employers to ascertain why
medical evidence is not available for the pertinent period
and to furnish additional evidence regarding the course
of the individual's condition.

SSR 83-20, 1983 WL 31249, at *2-3.  Thus, while "medical evidence serves as the

primary element in the onset determination," SSR 83-20, 1983 WL 31249, at *2,

the absence of contemporaneous medical records does not preclude a finding of

disability:

While [SSR 83-20] clearly emphasizes the importance of
objective medical evidence, it acknowledges that in some
cases, the claimant's impairment may have become

35

> disabling prior to the date it was first diagnosed . . . .
> Therefore, although objective medical evidence is
> necessary to establish the existence of a disabling
> impairment, if a claimant has already been found to
> suffer from a disabling impairment, objective medical
> evidence, while preferred, is not essential to resolving
> the onset date of that disability.

*Houston*, 2011 WL 6152992, at *12 (quoting *Plumley*, 2010 WL 520271, at *7

(internal citation omitted)); *see also Moriarty v. Astrue*, 2008 WL 4104139, at *6

(D.N.H. Aug. 28, 2008) ("Nowhere in [SSR 83-20] is there any suggestion that the

absence of medical records establishing an onset date is fatal to an individual's

disability claim. In fact, the SSR provides just the opposite, specifically noting

that in some cases it may be necessary to infer the onset date of a claimant's

disability from non-medical evidence.").

Thus, because plaintiff has already been found disabled and entitled to SSI

benefits as of July 1986, SSR 83-20 "requires the ALJ to determine the onset date

of disability." *Houston*, 2011 WL 6152992, at *11. The ALJ has not done so

here. The ALJ here instead focused his decision on the "complete lack of medical

evidence" during the period at issue. (Tr. 13). The ALJ noted that plaintiff and

her sister testified that plaintiff was disabled during the period at issue, but found

the statements "not entirely credible in light of the lack of a diagnosis and the

complete lack of medical evidence for that period." (*Id.*). The ALJ acknowledged

that "[s]ome records for the period at issue may have been destroyed because it

36

was so long ago," (Tr. 13, citing Tr. 536-37), and that medical records dated 1986 noted that plaintiff had been manifesting problems "for some time but had not sought active treatment until then" (*Id.*, citing Tr. 531) but nonetheless found that there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment prior to age 22. (Tr. 13-14). The undersigned notes that although the ALJ was not required to cite SSR 83-20 by name (and he did not), and although minor deviations from the analysis set forth in the Ruling may be tolerated, the ALJ's singular focus on the lack of medical evidence from the insured period does not comply with the purpose of the Ruling. *See Manson v. Comm'r of Soc. Sec.*, 2013 WL 3456960, at *9 (E.D. Mich. July 9, 2013) (finding that "the absence of contemporaneous medical records does not preclude a finding of disability") (citing *Houston*, 2011 WL 6152992, at *12); *see also Falconi*, 2012 WL 5381833, at *4 (collecting cases holding that ALJ erred in finding that the claimant must produce documents demonstrating that his mental impairments were disabling between the alleged disability onset date and the date found disabled under another title). "Negative inferences based on lack of medical evidence are especially problematic with respect to mental impairments, which often go undiagnosed and untreated for many years." *Manson*, 2013 WL 3456960, at *10 (citing *Blankenship*, 874 F.2d at 1124; *Burton v. Apfel*, 208 F.3d 212 (6th Cir. 2000) (relying on *Blankenship* and holding that the ALJ's finding that claimant

37

had no severe mental impairment was not based on substantial evidence where the ALJ's findings were "largely conclusory and based upon negative inferences")).

A remand pursuant to sentence four is appropriate when "insufficient evidence exists in the record to support the Commissioner's conclusions and further fact-finding is necessary." *Culbertson v. Barnhart*, 214 F. Supp.2d 788, 795 (N.D. Ohio 2002) (citing generally *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994)).  Although plaintiff bears the burden of establishing that she is entitled to disability benefits, courts have recognized that social security proceedings are "inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).  As a result, an ALJ has an affirmative duty to develop the factual record upon which his decision rests, regardless of whether the claimant is represented by legal counsel at the administrative hearing.  *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983).  To satisfy this duty, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," and must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Lashley*, 708 F.2d at 1052 (internal citations omitted).

A review of the record demonstrates that remand here would not be a mere formality, as the record is ambiguous as to when  functional limitations attributable to plaintiff's schizophrenia first manifested.  There is ample evidence

38

documenting that plaintiff had significant mental health problems prior to the date she was awarded SSI benefits in July 1986.  Plaintiff's sister testified at the hearing that plaintiff began to exhibit odd behaviors, including self-isolating, auditory hallucinations, and delusion, in high school, which correlates to when plaintiff quit high school (in the 9th grade), and which are consistent with the subsequent 1986 medical evaluations.  (Tr. 36, 45-46-7-8-52, 154).  Further, the State agency consultative psychiatrist reported in 1986, after speaking with plaintiff and her mother (who is now deceased), that plaintiff's psychiatric illness dated back to high school (Tr. 524-29), and plaintiff's treating psychiatrist reported in 1986 that plaintiff had been manifesting psychiatric problems "for some time" prior to beginning active treatment in 1986.  (Tr. 530).  Common sense dictates that plaintiff's well-documented mental impairment did not suddenly become disabling in July 1986.  *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989) ("In addition, and somewhat acknowledged by SSR 83-20, there is the common sense notion that appellant did not suddenly find himself, five months after the expiration of his [insured status time period], completely incapacitated by his schizophreniform disorder.").  Thus, the record reflects an individual with consistent and long-standing mental health impairments, who has been diagnosed by medical providers with schizophrenia.  The ALJ's constricted focus on the lack of medical records from the insured period is inconsistent with the requirements of

39

SSR 83-20.  Given the lack of precise evidence as to the onset of plaintiff's disability, SSR 83-20 required the ALJ to infer the date of disability based on "an informed judgment of the facts in th[is] particular case."  SSR 83-20, 1983 WL 31249, at *3.  A medical advisor could have assisted the ALJ in making this inference.  SSR 83-20 states that at the administrative hearing, the ALJ "should call on the services of a medical advisor when [the] onset [date] must be inferred." *Id.*  Although SSR 83-20 does not mandate that a medical advisor be called in every case, courts have construed this step to be "essential" when the record is ambiguous regarding onset date.  *See, e.g., Katt v. Astrue*, 225 Fed. Appx. 455, 456 (9th Cir. 2007); *Briscoe v. Barnhart*, 425 F.3d 345, 353 (7th Cir. 2005); *Spellman v. Shalala*, 1 F.3d 357, 363 (5th Cir. 1993).  Here, plaintiff claims disability as a result of a longstanding mental illness, and alleges an onset date far in the past.  Given these facts, it is not surprising that there is not a complete medical chronology of plaintiff's impairments in the record and thus there is ambiguity as to when plaintiff's disability began.  *See, e.g., Beasich v. Comm'r of Soc. Sec.*, 66 Fed. Appx. 419, 429 (3d Cir. 2003) ("The fact that a claimant may be one of the millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis to reject that an impairment existed.") (internal quotation and citation omitted).  A medical advisor is particularly useful in cases like this which involve slowly progressing mental impairments.  *See*

40

*Falconi*, 2012 WL 5381833 at *7 (collecting cases); *see also Timmons v. Colvin*, 2013 WL 3480704, at *12 (S.D. Tex. July 10, 2013) ("Given the absence and unavailability of medical evidence from the time frame at issue, the fact that Timmons was awarded SSI benefits in 1993 based on his disabling condition of schizophrenia, the non-medical lay statements/testimony, which collectively suggest that Timmons' mental health issues began while he was an adolescent, his subsequent medical histories describing Timmons' symptoms and problems that reference 1987 and 1988 as his date of diagnosis of schizophrenia, Timmons' onset date is not definite and medical inferences are necessary.").

In view of the undersigned's finding here that the ALJ failed to fully and fairly develop the record on which his decision was based, it necessarily follows that the ALJ's decision is not supported by substantial evidence. *See Burrows v. Comm'r of Soc. Sec.*, 2012 WL 5411113, at *12 (E.D. Mich. Sept. 28, 2012) (citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) ("when an ALJ fails to develop the record, he does not have sufficient facts to make a decision and, thus, his decision is not supported by substantial evidence")); *Houston*, 2011 WL 6152992, at *12 (remanding the case so that the ALJ can comply with the onset-date-determination procedure set forth in SSR 83-20); *see also Timmons*, 2013 WL 3480704, at *12 ("Because the ALJ failed to develop the record [concerning plaintiff's onset date and whether he was disabled prior to turning 22 on

41

November 18, 1988], the matter must be remanded to the Commissioner for consideration of [plaintiff's] application for child disability benefits[.]") *Fait v. Astrue*, 2012 WL 2449939, at *6 (E.D.N.Y. June 27, 2012) ("[T]o the extent that the record was insufficient for the ALJ to adequately assess a basis for granting or denying [disabled adult child's] benefits [because the record was devoid of evidence prior to age 22], the ALJ had an 'affirmative duty to investigate facts and develop the record.'") (citing *Pogozelski v. Barnhart*, 2004 WL 1146059, at *10 (E.D.N.Y. May 19, 2004)).

The undersigned concludes that the ALJ did not comply with SSR 83-20. He did not determine plaintiff's disability onset date and did not obtain additional information to make that determination, but instead concluded that plaintiff was not disabled prior to age 22 solely on the absence of contemporaneous medical records.  The undersigned therefore concludes that this matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** to the Commissioner for

further proceedings consistent with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may

43

rule without awaiting the response.

Date: February 18, 2014            s/Michael Hluchaniuk
                                         Michael Hluchaniuk
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 18, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: David Chermol, Kelie C. Schneider, William W. Watkinson, Jr., Frederick J. Daley, Jr., Judith E. Levy, Meghan O'Callaghan and the Commissioner of Social Security.

                                         s/Tammy Hallwood
                                         Case Manager
                                         (810) 341-7887
                                         tammy_hallwood@mied.uscourts.gov